UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANKLIN LYNCH,<br>　　　　Plaintiff,<br>　　v.<br>RON DAVIS,<br>　　　　Defendant. | Case No. 18-cv-00444-EMC<br>**DEATH PENALTY CASE**<br>**ORDER DENYING PETITIONER'S MOTION FOR PARTIAL SUMMARY JUDGMENT SCHEDULING ORDER**<br>Docket No. 48 |

Before the Court is Petitioner's Motion for Partial Summary Judgment Scheduling Order (Docket No. 48). Respondent has filed a Response in Opposition (Docket No. 51) and Petitioner has filed a Reply (Docket No. 52). The matter is fully briefed and is ripe for disposition without the need of an evidentiary hearing. For the reasons that follow, Petitioner's motion will be **DENIED**.

Petitioner seeks an order allowing him to file a motion for partial summary judgment respecting his claim that he was unconstitutionally denied his right to represent himself at trial, which is set forth in Claim 9 of the petition for writ of habeas corpus that Petitioner filed on July 30, 2019. *See* Docket No. 30 at 150. Petitioner requests that the Court stay and hold in abeyance adjudication of his remaining claims, both exhausted and unexhausted, so that he may expeditiously litigate Claim 9. *See* Docket No. 48 at 14. The basis for Petitioner's request is the ongoing novel coronavirus pandemic and Petitioner's asserted elevated risk of harm from the virus due to his age and comorbid health conditions, including obesity, asthma, hypertension, and prediabetes. *Id.* at 3-4. Given the outbreak of novel coronavirus infections occurring at San Quentin State Prison, he argues that permitting him to litigate Claim 9 to completion, while

staying and holding in abeyance all of his remaining claims, will "avert the possible vitiation of his liberty interest in life itself[.]" Docket No. 52 at 6.  Respondent opposes Petitioner's motion, arguing that the Court is not permitted to partially adjudicate a "mixed" petition containing both exhausted and unexhausted claims.  Docket No. 51 at 4-5.  Respondent also argues that, as a practical matter, "[s]ummary adjudication on Claim 9 cannot meaningfully address the health concerns petitioner raises" because it would take many months to litigate Claim 9 to completion in this Court and in the Court of Appeals and, even if Petitioner succeeds in those venues, rather than obtaining any prompt release from custody, he "would be transferred to local custody for retrial." *Id.* at 6.

By way of a Notice (Docket No. 53) filed on July 1, 2020, Petitioner has advised the Court that he now has contracted COVID-19, the disease caused by the novel coronavirus.  *See* Docket No. 53 at 2.  Although this development seemingly moots Petitioner's motion—it is understood that litigation of Claim 9 in this Court alone could take many months—he nevertheless continues to press his request because "[a]ssuming that [he] recovers from his current infection, the science surrounding this novel coronavirus is showing that he will nonetheless remain vulnerable to reinfection." *Id.* at 4.

In *Rose v. Lundy*, 455 U.S. 509, 521 (1982), the Supreme Court established the "total exhaustion" rule when it held, as a matter of comity, that a federal district court must dismiss a "mixed" petition for habeas corpus relief containing both exhausted and unexhausted claims.  With the enactment of the Anti-Terrorism and Effective Death Penalty Act (AEDPA) in 1996, Congress "preserved *Lundy*'s total exhaustion requirement" while also imposing a one-year statute of limitations on the filing of federal habeas petitions.  *Rhines v. Weber*, 544 U.S. 269, 274 (2005) (citing 28 U.S.C. § 2254(b)(1)(A) & § 2244(d)).  Due to the interplay of the "total exhaustion" rule and AEDPA's statute of limitations, the Supreme Court has held that a district court possesses the equitable authority to stay a mixed petition so that a petitioner may return to state court in order to exhaust his claims.  *See id.* at 275-76.  However, as set forth above, Petitioner's motion requests more than just a stay and abeyance of his federal petition so that he may return to state court to exhaust certain claims.  Instead, Petitioner here seeks to expeditiously and summarily

adjudicate an ostensibly exhausted claim originating in what he appears to concede is a mixed petition, while employing stay and abeyance to preserve his remaining claims for later review. Unfortunately, Petitioner provides no authority demonstrating this Court's clear authority to ignore the "total exhaustion" rule in order to partially adjudicate a mixed petition.[1]

Even if Petitioner had presented such authority, however, the Court would still deny the motion. Considering that Petitioner has contracted COVID-19, it is apparent that a grant of the relief Petitioner seeks will not obviate his predicament. Even assuming, as Petitioner asserts (*see* Docket No. 52 at 7), that he may argue for release pending an appeal of this Court's decision to grant the writ on Claim 9, it would take at minimum several months to adjudicate Claim 9 in this Court. Petitioner's medical condition from his infection will likely have run its course well before Claim 9 could be finally adjudicated in this Court and any request for release pending appeal could be considered. Petitioner attempts to surmount this obstacle by arguing that "the science surrounding this novel coronavirus is showing that he will nonetheless remain vulnerable to reinfection." Docket No. 53 at 4. However, the authority Petitioner cites for this proposition, which he quotes in an explanatory parenthetical, reveals no such scientific consensus on this point. Rather, it states only that "'it remains unknown to what degree persons with detectable anti-SARS-CoV-2 antibodies are immune to reinfection.'" *Id.* (quoting Center for Disease Control,

---

[1] The Court acknowledges that, prior to the enactment of the AEDPA, at least one federal court of appeals held that, in extraordinary circumstances, a federal court may adjudicate the exhausted claims presented in a mixed petition rather than dismissing the entire petition pursuant to *Rose*. *See Weaver v. Foltz*, 888 F.2d 1097, 1100 (6th Cir. 1989). However, even to the extent *Weaver*'s reasoning survives the AEDPA, it is inapposite. The extraordinary circumstance relied upon by the Sixth Circuit in *Weaver* was the compelling strength of the habeas petitioner's exhausted claim that he was convicted in the absence of sufficient supporting evidence. *Id.* As the Sixth Circuit noted, it had previously granted a writ of habeas corpus to Weaver's codefendant on the basis of insufficient evidence. *Id.* at 1099. Because the "state presented no evidence at trial or any subsequent stage to distinguish the evidence against these codefendants[,]" the Sixth Circuit found the "factual and evidentiary overlap" between the two petitioners' cases to be an "extraordinary" circumstance precluding the disparate results of a grant of the writ for Weaver's codefendant and dismissal of Weaver's habeas petition due to his joinder of exhausted and unexhausted claims. *Id.* at 1100. The Sixth Circuit in *Weaver* therefore remanded to the district court with instructions to consider Weaver's insufficient evidence claim, as well as "any other claims which Weaver has exhausted in the state courts[.]" *Id.* Nothing in *Weaver*, or in any case cited by Petitioner, permits a federal court to disregard the "total exhaustion" rule and proceed to partially adjudicate a mixed petition based upon the asserted desire, no matter how well-founded, to expedite litigation as opposed to compelling evidence regarding guilt.

3

1  *Patients with Persistent or Recurrent Positive Tests* (June 28, 2020)). In the absence of any cited authority demonstrating that this Court may ignore the "total exhaustion" rule to partially adjudicate a mixed petition under AEDPA, the Court is disinclined to do so based merely on Petitioner's speculation about his possible vulnerability to reinfection.

The Court is deeply sympathetic to Petitioner's concerns regarding the risk to his health and well-being posed by the novel coronavirus and is chagrined to have learned of his infection.[2] However, because the Court finds that granting the relief Petitioner seeks will not meaningfully alleviate the risks about which he complains, the Court cannot indulge his extraordinary request to ignore the "total exhaustion" rule absent a clear legal basis therefor. Accordingly, Petitioner's Motion for Partial Summary Judgment Scheduling Order (Docket No. 48) is **DENIED**.

This order disposes of Docket No. 48.

**IT IS SO ORDERED**.

Dated: July 7, 2020

_____
EDWARD M. CHEN
United States District Judge

---

[2] The Court is mindful of the extraordinary growth of the coronavirus outbreak at San Quentin State Prison, including among the prison's death row population. *See, e.g.,* Leonardo Castaneda, *Three Death Row Inmates in San Quentin die of COVID-19 Amid Growing Prison Outbreak*, The Mercury News, July 3, 2020, *available at* https://www.mercurynews.com/2020/07/03/two-death-row-inmates-in-san-quentin-die-of-covid-19-amid-growing-prison-outbreak/. The Court is also mindful that issues surrounding the California Department of Corrections and Rehabilitation's response to the COVID-19 pandemic, including at San Quentin, are presently before the Honorable Jon S. Tigar in the ongoing *Plata* litigation. *See, e.g.,* Order Setting July 6, 2020 Case Management Conference (Docket No. 3373) at 3-4, *Plata v. Newsom*, Civ. No. 4:01-cv-1351-JST (July 5, 2020) (describing the extent of the coronavirus outbreak in California prisons and remarking that the outbreak at San Quentin provides cause to reevaluate the court's prior finding that defendants have not been "deliberately indifferent" to the risks to inmates' health posed by the novel coronavirus). Of course, to the extent that Petitioner here is aggrieved by prison officials' failure to protect him from infection or to provide him with adequate medical care, his remedy lies in civil rights litigation and is beyond the scope of this habeas corpus litigation.