UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANKLIN LYNCH,<br><br>    Petitioner,<br><br>    v.<br><br>RON DAVIS, et al.,<br><br>    Respondents. | Case No. 18-cv-00444-EMC<br><br>**DEATH PENALTY CASE**<br><br>**ORDER DENYING PETITIONER'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Docket No. 103 |

Petitioner is a condemned inmate at San Quentin Prison. Before the Court is Petitioner's Motion for Judgment on the Pleadings (Docket No. 103), which seeks a ruling pursuant to Federal Rule of Civil Procedure 12(c) on Claim Nine in the Amended Petition for a Writ of Habeas Corpus ("Amended Petition") (Docket No. 82). Respondent has filed a response (Docket No. 104), and Petitioner has replied (Docket No. 106). For the reasons described below, the Court **DENIES** the motion.

## I.    BACKGROUND

In 1992 an Alameda Superior Court jury convicted Petitioner of, *inter alia*, the first-degree murders of Pearl Larson, Adeline Figuerido, and Anna Constantin. (Docket No. 82 at 20); *People v. Lynch*, 237 P.3d 416, 424, 50 Cal. 4th 693, 701 (2010). Finding true the special-circumstance allegations of burglary murder, robbery murder, and multiple murder, the jury sentenced Petitioner to death. *Lynch*, 237 P.3d at 424, 50 Cal. 4th at 702. The California Supreme Court affirmed Petitioner's convictions and sentence on August 12, 2010. *Id.* The state court also denied Petitioner's Petition for a Writ of Habeas Corpus in a summary order on January 17, 2018. (Docket No. 82 at 26.) Petitioner filed a Petition for a Writ of Habeas Corpus (Docket No. 30) in

United States District Court
Northern District of California

this Court on July 30, 2019 and filed the Amended Petition on May 5, 2021.

Arguing that a judgment on Claim Nine will resolve the Amended Petition in his favor and negate the need for further proceedings, Petitioner has filed the instant motion. Claim Nine asserts that "the trial court erroneously denied Petitioner's timely request to represent himself at trial." (Docket No. 82 at 154 (capitalization standardized).) In rejecting this claim on direct appeal, the California Supreme Court "conclude[d] the trial court properly denied his [*Faretta*] motions on the basis they were untimely." *Lynch*, 237 P.3d at 430, 50 Cal. 4th at 712.

The parties do not dispute the relevant facts underlying Claim Nine. Petitioner was arraigned on October 27, 1987. *Id.* The court appointed Michael Ciraolo and Michael Berger as trial counsel shortly thereafter. *Id.* The court held a preliminary hearing over the course of eight months from late-1987 through mid-1988. *Id.* On June 10, 1991, Petitioner filed a motion pursuant to *People v. Marsden*, 465 P.2d 44, 2 Cal. 3d 118 (1970) ("*Marsden* motion"), in which he sought to replace his trial counsel because he believed that counsel were not working with him on tactical decisions, would not inform him of their strategies, and had failed to communicate with him regularly. *Id.*, 237 P.3d at 431, 50 Cal. 4th at 712. Among other complaints, Petitioner told the court that he lacked confidence in his attorneys' ability to represent his best interests. *Id.* The trial court held a hearing on the *Marsden* motion on August 1, 1991.

While waiting for a ruling on the *Marsden* motion, Petitioner "personally withdrew his previously-entered waiver of his right to a speedy trial and demand[ed] to be brought to trial . . . within sixty days of the filing" of the September 4 withdrawal. *Id.*, 237 P.3d at 431, 50 Cal. 4th at 713 (quotation marks omitted). The withdrawal moved the statutory deadline to bring Petitioner to trial to November 1, 1991. *Id.*, 237 P.3d at 432, 50 Cal. 4th at 714. At that time, the case was assigned to Judge Delucchi for trial. *Id.*, 237 P.3d at 431, 50 Cal. 4th at 713. Pretrial motions began on November 12, 1991. *Id.*, 237 P.3d at 437, 50 Cal 4th at 721.

Petitioner filed his first motion to represent himself, pursuant to *Faretta v. California*, 422 U.S. 806 (1975), on September 27, 1991 ("First *Faretta* Motion"). *Id.*, 237 P.3d at 432, 50 Cal. 4th at 714. Judge Delucchi held a hearing on the First *Faretta* Motion on October 7, 1991. *Id.*, 237 P.3d at 432, 50 Cal. 4th at 715. During the hearing, the trial court investigated Petitioner's

2

1  reasons for electing to represent himself, questioned the attorneys about the time they had spent
2  preparing the case, and asked Petitioner how long he might need to be prepared to proceed to trial.
3  *Id.*, 237 P.3d at 432-34, 50 Cal. 4th at 715-18.  Petitioner was unable to state with certainty the
4  amount of time he would need to prepare, and his attorneys confirmed that the discovery was
5  extensive and took a considerable amount of time to review.  *Id.*  The court then explained to
6  Petitioner that the withdrawal of his waiver of his speedy-trial rights started the statutory clock and
7  required the court to call the case to trial imminently.  *Id.*, 237 P.3d at 434, 50 Cal. 4th at 717.  The
8  prosecutors expressed concern about the number and ages of their witnesses if trial were delayed.
9  *Id.*, 237 P.3d at 435, 50 Cal. 4th at 718.  The court denied the First *Faretta* Motion as untimely,
10 citing in particular the potential delay granting the motion would create:

> ". . . because of the advanced age of the victims, . . . and because of the possible delay in the proceedings which might arise in the event I granted Mr. Lynch his pro per status, the Court's going to rule that this motion is not timely made.  We're on the eve of trial.  The trial is to begin within two weeks.  There was a time waiver [sic].  The Court's made space and time available for the trial of this case.  Both sides are prepared to proceed.  And so it's the Court's feeling that it's not timely made, so the petition to proceed in pro per will be denied for the reasons I've stated on the record."

*Id*, 237 P.3d. at 435, 50 Cal. 4th at 719 (quoting trial court).

Petitioner filed another motion to represent himself ("Second *Faretta* Motion") on October 16, 1991.  *Id.*  At the same time, he filed an additional *Marsden* motion and a motion to disqualify Judge Delucchi.  *Id.*  The court denied both the disqualification motion and the Second *Faretta* Motion as untimely and held a hearing on the *Marsden* motion, which it denied.  *Id.*, 237 P.3d at 435-36, 50 Cal. 4th at 719-20.  On October 23, 1991, Judge Delucchi reconsidered the disqualification motion, deemed himself disqualified, and vacated the rulings in which he denied the *Mardsen* motion and the Second *Faretta* Motion.  *Id.*, 237 P.3d at 436, 50 Cal. 4th at 720.

The case was reassigned to Judge Sarkisian, who denied both pending motions.  *Id.*, 237 P.3d at 437, 50 Cal. 4th at 721.  Judge Sarkisian considered the transcripts of the proceedings that had been held before Judge Delucchi.  *Id.*  In denying the Second *Faretta* Motion as untimely, the court explained:

> Among the factors that I have considered in assessing the

3

> defendant's request are his prior proclivity to attempt to substitute counsel, the stage of the proceedings, and in particular the disruption and the delay that might reasonably be expected to follow the granting of his motion. This record indicates that many of the witnesses in this case are elderly.

*Id.* The court additionally noted that Petitioner had been represented by his counsel "for a number of years." *Id.* The court then set pretrial motions to begin on November 12, 1991. *Id.*

On direct appeal, the California Supreme Court reviewed the trial court's denial of the *Faretta* motions for abuse of discretion. *Id.* 237 P.3d at 437, 50 Cal 4th at 722 (citing *People v. Windham*, 560 P.2d 1187, 1191-92, 19 Cal. 3d 121, 128 (1977).). The Court set out the standard for reviewing a claim for self-representation under both federal and state law:

> A trial court must grant a defendant's request for self-representation if the defendant unequivocally asserts that right within a reasonable time prior to the commencement of trial, and makes his request voluntarily, knowingly, and intelligently. As the high court has stated, however, "*Faretta* itself and later cases have made clear that the right of self-representation is not absolute." Thus, a *Faretta* motion may be denied if the defendant is not competent to represent himself, is disruptive in the courtroom or engages in misconduct outside the courtroom that "seriously threatens the core integrity of the trial," or the motion is made for the purpose of delay.

*Id.*, 237 P.3d at 437, 50 Cal 4th at 721-22 (citations omitted). In view of the trial court's ruling, the California Supreme Court specifically focused on timeliness. Under California law, a defendant makes a timely motion for self-representation "a reasonable time prior to the commencement of trial." *Windham* 560 P.2d at 1191, 19 Cal. 3d at 128. The Court, however, noted that the United States Supreme Court had "never delineated when a motion may be denied as untimely[; n]or ha[d it] fixed any definitive time before trial at which a motion for self-representation is considered untimely, or articulated factors a trial court may consider in determining whether a self-representation motion was filed a reasonable time before trial." *Lynch*, 237 P.3d at 437-38, 50 Cal. 4th at 722.

In light of the lack of more specific guidance from the United States Supreme Court, the California Supreme Court has provided some guidelines on timeliness of *Faretta* motions. "*Faretta* motions made on the eve of trial are untimely" and "motions made long before trial [are] timely." *Id.*, 237 P.3d at 438, 50 Cal. 4th at 722-23. Moreover, the trial court should consider the

context in which the motions are made. *See id.*, 237 P.3d at 439, 50 Cal. 4th at 724 (collecting cases). "[T]imeliness for purposes of *Faretta* is based not on a fixed and arbitrary point in time, but upon consideration of the totality of the circumstances that exist in the case at the time the self-representation motion is made." *Id.* Trial courts may consider "the needs of fairness and the demands of [their] calendar[s]." *Id.*, 237 P.3d at 440, 50 Cal. 4th at 725. Further,

> a trial court properly considers not only the time between the motion and the scheduled trial date, but also such factors as whether trial counsel is ready to proceed to trial, the number of witnesses and the reluctance or availability of crucial trial witnesses, the complexity of the case, any ongoing pretrial proceedings, and whether the defendant had earlier opportunities to assert his right of self-representation.

*Id.*, 237 P.3d at 440, 50 Cal. 4th at 726.

Using these standards, the California Supreme Court determined that Petitioner's trial court did not abuse its discretion in concluding that he did not make either of his motions for self-representation in a timely manner. *Id.* The California Supreme Court cited the complexity of the case, which included "three counts of murder and two counts of attempted murder[,] . . . charges of burglary and robbery, . . . and special circumstance allegations of burglary murder, robbery murder, and multiple murder, which if found true subjected defendant to a possible death sentence." *Id.* The California Supreme Court noted the potential for sixty-five prosecution witnesses and "voluminous" discovery. *Id.*, 237 P.3d at 440-41, 50 Cal 4th at 726. The California Supreme Court also held that the trial court properly considered the facts that many of the most important witnesses were elderly, attorneys for both parties were prepared to go to trial, and Petitioner had withdrawn his waiver of his right to a speedy trial. *Id.*, 237 P.3d at 440-41, 50 Cal 4th at 726-27. Finally, Petitioner had acknowledged that he did not know how long it would take him to prepare to go to trial, even in the face of the statutory speedy-trial deadline. Considering the circumstances, the California Supreme Court concluded that "granting the motion was reasonably likely to result in substantial delay and disruption of the proceedings" and affirmed the trial court's denial of Petitioner's *Faretta* motion. *Id.*, 237 P.3d at 442, 50 Cal. 4th at 728.

///

///

## II.     DISCUSSION

Summary judgment is proper when the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Because the parties do not dispute the material facts on Claim Nine, the Court turns to the law.  A federal district court sitting in habeas review of a state-court decision must abide by the strictures of the Anti-Terrorism and Effective Death Penalty Act of 1994 ("AEDPA").  28 U.S.C. § 2254.  Under AEDPA, a petitioner must demonstrate that the state court's adjudication of the merits of his claim resulted in a decision "(1) that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).  A federal court must presume the correctness of the state court's factual findings; a petitioner may only rebut the presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  In applying these standards, a federal court looks to the "last reasoned decision" by a state court.  *Maxwell v. Roe*, 606 F.3d 561, 568 (9th Cir. 2010).

The "contrary to" and "unreasonable application" clauses of Section 2254(d)(1) have separate and distinct meanings.  A state court's decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of Supreme Court law if "the state court identifies the correct governing principle . . . but unreasonably applies that principle to the facts of the petitioner's case.  *Id.* at 414.  Additionally, a state court's decision may be an "unreasonable application" of Federal law if it "extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable." *Hernandez v. Small*, 282 F.3d 1132, 1142 (9th Cir. 2002).

The Supreme Court has emphasized that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101

6

(2011) (citing *Williams*, 529 U.S. at 410). "[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable." *Lockyear v. Andrade*, 538 U.S. 63, 75-76 (2003). To be objectively unreasonable, a state court's error must be "so lacking in justification that [it is] well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 563 U.S. at 103. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Additionally, "[h]oldings of the United States Supreme Court at the time of the state court decision are the only definitive source of clearly established federal law under AEDPA. While Circuit law may be 'persuasive authority' for purposes of determining whether a state court decision is an unreasonable application of Supreme Court law, only the Supreme Court's holdings are binding on the state courts and only these holdings need be reasonably applied." *Rowland v. Chappell*, 902 F. Supp. 2d 1296, 1309 (N.D. Cal. 2012).

United States Supreme Court decisions discussing the right to represent oneself after *Faretta* are scarce. *Faretta* is "[t]he only Supreme Court decision to discuss the timeliness of a request to proceed pro se." *Moore v. Calderon*, 108 F.3d 261, 265 (9th Cir. 1997). "[A]fter Moore, we know that *Faretta* clearly established some timing element, but we still do not know the precise contours of that element. At most, we know that *Faretta* requests made 'weeks before trial' are timely. Because the Supreme Court has not clearly established when a *Faretta* request is untimely, other courts are free to do so as long as their standards comport with the Supreme Court's holding that a request 'weeks before trial' is timely." *Marshall v. Taylor*, 395 F.3d 1058, 1061 (9th Cir. 2005). Moreover, absent a specific delineation of timeliness by the Supreme Court, the *Faretta* decision does not "preclude a consideration of factors other than the number of weeks before trial a self-representation motion was made." *Faultry v. Allison*, 623 F. App'x 315, 316 (9th Cir. 2015).

Petitioner bears the burden of demonstrating the objectively unreasonable nature of the

7

state court decision in light of controlling Supreme Court authority. *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002). Specifically, Petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. The Supreme Court has explained that "evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 653, 664 (2004). "If Supreme Court cases 'give no clear answer to the question presented,' the state court's decision cannot be an unreasonable application of clearly established federal law." *Ponce v. Felker*, 606 F.3d 596, 604 (9th Cir. 2010) (quoting *Wright v. Van Patten*, 552 U.S. 120, 126 (2008)).

Although Petitioner made his first *Faretta* motion five weeks before the statutory deadline for trial to begin, within the "weeks before trial" standard established by *Faretta*, *Lynch*, 237 P.3d at 432, 50 Cal. 4th at 714, the Supreme Court has not specified the number of weeks which would make the motion timely per se. Nor does *Faretta* preclude consideration of factors other than the number of weeks before trial. The California Supreme Court did just that. *Id.*, 237 P.3d at 435, 50 Cal. 4th at 719. Among the circumstances the California Supreme Court considered were the facts that Petitioner had been awaiting trial for around four years, the age and availability of several key witnesses, the preparedness of Petitioner's counsel, and Petitioner's inability to state how much time he needed to review the voluminous discovery and prepare for trial. *Id.*, 237 P.3d at 440-41, 50 Cal. 4th at 726-27. This Court cannot conclude that this determination was an objectively unreasonable application of *Faretta*, given the lack of specific benchmarks in *Faretta* or any other U.S. Supreme Court decision precluding consideration of such circumstances.

Both the Ninth Circuit and this Court have found no *Faretta* violations after considering a variety of circumstances. *See Mitchell v. CSP Corcoran*, No. 16-17057, 2021 WL 5984976, at *1 (9th Cir. Dec. 16, 2021), *cert. denied sub nom. Mitchell v. Madden*, 142 S. Ct. 2883 (2022) (finding reasonable state court's conclusion "that Mitchell's request to represent himself would be unduly prejudicial and disruptive to the trial considering that Mitchell also requested four

1   additional weeks for trial preparation in a case that involved lengthy past continuances, where the
2   trial court had already convened approximately 1,000 jurors, and where elderly witnesses were set
3   to testify"); *Randle v. California*, 142 F. App'x 977 (9th Cir. 2005) (concluding state court's
4   application of factors identified in *Windham* not unreasonable application of clearly established
5   federal law); *Martinelli v. Neuschmid*, No. 19-CV-05461-JD, 2020 WL 6290376, at *6–7 (N.D.
6   Cal. Oct. 27, 2020) (finding denial of *Faretta* motion not unreasonable where state court
7   considered circumstances surrounding request, including number of witnesses and length of time
8   petitioner needed to prepare); *Oliver v. Gower*, No. 15-03556 BLF (PR), 2017 WL 11568171, at
9   *12-13 (N.D. Cal. Mar. 24, 2017) (ruling denial of *Faretta* motion "a little over a month before
10  trial" was not unreasonable where state court also considered circumstances including "significant
11  defense investigation," preparedness of defense counsel, and potential unavailability of key
12  witnesses). The Supreme Court has emphasized that state courts must be granted "deference" and
13  "latitude" in matters where Supreme Court precedent establishes only a general standard, as
14  opposed to a specific legal rule. *Harrington*, 562 U.S. at 101. "The 'weeks before trial' standard
15  of *Faretta* is a general one," *Kincaid v. Runnels*, 450 F. App'x 649, 650–51 (9th Cir. 2011); it
16  leaves interpretive ruling on that rendered by the California Supreme Court here.

17  This Court cannot conclude that the California Supreme Court's determination that
18  Petitioner's *Faretta* motions were untimely was "an error well understood and comprehended in
19  existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103;
20  *see Gill v. Ayers*, 342 F.3d 911, 920 (9th Cir. 2003) ("It is logical to conclude that if a case
21  presents an issue close enough for reasonable minds to differ, then a state court's decision
22  resolving the issue, even if incorrect, would not be objectively unreasonable.") The California
23  Supreme Court's determination of the timeliness of Petitioner's *Faretta* motion was not
24  objectively unreasonable. For these reasons, Petitioner's Motion for Judgment on the Pleadings is
25  denied.
26  ///
27  ///
28  ///

### III.   CONCLUSION

For the foregoing reasons, Petitioner's Motion for Judgment on the Pleadings (Docket No. 103) is **DENIED**. The parties shall confer upon a briefing schedule for the claims in the Amended Petition and present a Joint Case Management Statement within thirty (30) days of the date of this order.

This order disposes of Docket No. 103.

**IT IS SO ORDERED**.

Dated: July 27, 2023

_____
EDWARD M. CHEN
United States District Judge